UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:18-CR-199 |
| | ) | |
| CALVIN MAURICE BUCHANAN | ) | |

## MEMORANDUM AND ORDER

Now before the Court is the defendant's third *pro se* motion for reconsideration of the denial of his request for compassionate release under 18 U.S.C. 3582(c)(1)(A)(i), as supplemented. [Docs. 42, 43]. The United States has responded in opposition [docs. 46, 47] and the defendant has not replied within the time allowed by this Court's Local Rules.

In light of intervening legal authority, *see United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020), the Court will consider the instant motion *de novo*. For the reasons that follow, the motion will be denied.

### I. BACKGROUND

In July 2019, the Honorable Pamela L. Reeves sentenced the defendant to a net term of 87 months' imprisonment for conspiring to distribute and possess with the intent to distribute heroin, and for possessing a firearm in furtherance of that crime. The defendant is serving that sentence at FPC Montgomery with a projected release date of August 26, 2024. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 21, 2021).

The defendant first moved for compassionate release in April 2020, citing the COVID-19 pandemic, his diagnoses of sarcoidosis and hypertension, and his rehabilitative efforts. [Doc. 36]. Judge Reeves denied that motion for failure to exhaust administrative remedies. [Doc. 37].

The defendant moved for reconsideration the following month. [Doc. 38]. Judge Reeves denied that motion, again for failure to exhaust administrative remedies. [Doc. 39].

The defendant next moved for compassionate release in July of 2020. [Doc. 40]. In August 2020, Judge Reeves denied that motion on its merits, finding that the defendant had failed to meet his burden of demonstrating extraordinary and compelling reasons for relief. [Doc. 41]. In relevant part, Judge Reeves relied on the then-controlling section 1B1.13 of the United States Sentencing Commission Guideline Manual ("U.S.S.G.").

In his pending motion, the defendant again cites the COVID-19 pandemic, hypertension, and sarcoidosis.[1]

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

---

[1] The defendant also alludes to issues pertaining to his conditions of confinement. Such claims might be cognizable, *see, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976), but they should be presented in a civil lawsuit in the prisoner's district of confinement after the exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(a). There is no evidence that this defendant has exhausted his administrative remedies on those claims, nor is he incarcerated in this judicial district.

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. As mentioned above, district courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2]

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days have passed since that request was received by the warden. [Doc. 42]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

### B. Merits

As mentioned above, in support of his motion the defendant cites the COVID-19 pandemic, hypertension, and sarcoidosis. In previous filings, he has also mentioned his rehabilitative efforts.

At the defendant's prison, there are currently one staff and zero inmates positive for COVID-19, with 46 inmates and 16 staff having recovered, and no inmate or staff deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 21, 2021). These numbers are historically significant, but the Court simultaneously notes that outside the prison setting our nation remains in grave crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread

4

Case 3:18-cr-00199-RLJ-HBG   Document 50   Filed 10/25/21   Page 4 of 10   PageID #: 250

through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's prison 65 staff and 355 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Oct. 21, 2021). The defendant is one of those 355 inmates. [Doc. 47].

BOP medical records confirm that the defendant suffers from hypertension which is "[c]ontrolled on medication." [Docs. 42; 40, Ex. 1]. He is prescribed a corticosteroid for sarcoidosis. [*Id.*]. Prolonged use of corticosteroids, and "possibly" hypertension, are factors which can increase the risk of severe illness from a COVID-19 infection. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 21, 2021).

However, from the record before this Court, "the severity of [the instant defendant's] condition and its associated risks are less than clear." *See United States v. Lemons*, ___ F.4th ___, 2021 WL 4699249, at *3 (6th Cir. Oct. 8, 2021). The BOP scores the defendant as a Care Level 2 inmate. [Doc. 46, Ex. 2]. "Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical . . . conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring. Enhanced medical resources, such as consultation or evaluation

5

by medical specialists, may be required from time to time." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Oct. 21, 2021).

Further, as noted, the defendant is now fully vaccinated against COVID-19. The Sixth Circuit Court of Appeals has recently held that, "even recognizing the purported seriousness of his condition," a defendant's

> access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*

*Lemons*, 2021 WL 4699249, at *3. That published holding binds this Court. *See, e.g., Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). As such, the defendant has not carried his burden of showing extraordinary and compelling grounds for compassionate release. For that reason alone, his motion will be denied. *See Elias*, 984 F.3d at 519.[3]

---

[3] The defendant's rehabilitative efforts [doc. 40, Ex. 1] do not change the Court's conclusion. The defendant has indeed participated in certain coursework but, as will be discussed below, other aspects of his prison conduct are less than positive.

6

Additionally, compassionate release in this case would be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to that statute,

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>         (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
>         (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .
>
>     . . .
>
> (5) any pertinent policy statement—

> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, the defendant himself sold heroin and he also "obtained heroin from his sources of supply and then recruited others to sell and to distribute heroin that the defendant supplied to his sellers." [Presentence Investigation Report ("PSR"), doc. 23, ¶ 18]. The defendant was arrested in possession of more than 68 grams of heroin. [*Id.*, ¶ 19]. A loaded firearm was found in his residence, and he admittedly possessed that gun in furtherance of his heroin distribution. [*Id.*, ¶ 20]. According to the state arrest warrant, the defendant refused officers' commands to surrender, was taken to the ground where he continued to resist, and he resisted further even after being tased. [*Id.*, ¶ 22]. The firearm in his residence had previously been reported stolen. [*Id.*].

The defendant's criminal history includes three controlled substance convictions along with one for "Felony Firearm / Recorders Court." [*Id.*, ¶¶ 43-45]. While serving the longest of those sentences, he was cited for 14 infractions including "Fighting, Assault and Battery on a Staff Member, Possession of Stolen Property, and Theft." [*Id.*, ¶ 44]. He committed the instant offense while under a suspended sentence for marijuana possession.

8

[*Id.*, ¶¶ 45, 47].

The defendant's daily polysubstance abuse dates back to age 13. [*Id.*, ¶ 57]. His cited health conditions predate the instant offense but were insufficient to keep him from possessing a loaded firearm, selling heroin, recruiting others to do the same, and tenaciously resisting arrest. [*Id.*, ¶ 55].

The Court appreciates that the defendant is presently housed at a minimum-security federal prison camp. *See* https://www.bop.gov/locations/institutions/mon/ (last visited Oct. 21, 2021). Conversely, the Court is disappointed to learn that the defendant has been sanctioned for moderate disruptive conduct and that he either failed or withdrew from the BOP's Residential Drug Abuse Program. [Doc. 46, Exs. 2, 3].

In this case, the defendant's crimes of conviction were unquestionably serious, as was his conduct when officers attempted to arrest him. Further, as evidenced by the facts of this case, his were crimes which can be committed by persons in good or bad health. Approximately 34 months of actual time remain on his sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). Compassionate release on these facts would not reflect the seriousness of the offenses of conviction, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes of this defendant.

## III. CONCLUSION

As provided herein, the defendant's renewed motion for compassionate release [doc. 42] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge